NO. 3--00--0885

(consolidated with NO. 3--00--0886)

                                                                 

IN THE 

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

THE AETNA CASUALTY AND ) 

SURETY CO., )

Plaintiff-Appellee ) Appeal from the Circuit Court 

) of the 14th Judicial Circuit,

O'ROURKE BROS., INC.,     ) Rock Island County, Illinois

Defendant-Appellant )

)

(O'ROURKE BROS, INC., )

JORBROS, INC., )

O'ROURKE BROS., INC. OF MAMOU, )

O'ROURKE BROS., INC. OF WEST )

FLORIDA, )

O'ROURKE BROS., INC. OF ORLANDO )

O'ROURKE BROS., INC. OF GEORGIA )

O'ROURKE BROS., INC. OF ATLANTA, )

and U.S. GOLD, )

Counter-Plaintiffs, )

Appellants; )

THE AETNA CASUALTY AND SURETY CO., )

Counter-Defendant, Appellee), ) 

)

(O'ROURKE BROS., INC., )

Third-Party Plaintiffs, )

Appellants; )

AMERICAN MANUFACTURERS MUTUAL )

INSURANCE COMPANY, an ILLINOIS ) 96--MR--191

CORPORATION, )

Third-Party Defendant, ) 

Appellee). )

)

CONSOLIDATED WITH: )

3-00-0886 (96--MR--191) )

)

The Aetna Casualty & Surety Co., )

Appellee/Cross-Appellant, )

v. )

O'Rourke Bros., Inc., )

Appellant/Cross-Appellee, )

)

(O'Rourke Bros., Inc., et al., )

Appellants; )

The Aetna Casualty and Surety Co., )

Appellee), )

)

(O'Rourke Bros., Inc., )

Third Party Plaintiffs; ) Honorable

American Manufacturers Mutual ) Charles H. Stengel and

Insurance Co., ) Martin E. Conway,

Third Party Defendant). ) Judges, Presiding

                                                                   
 

JUSTICE THOMAS HOMER delivered the opinion of the court:

                                                                  

This appeal arises out of a declaratory judgment action brought by Aetna Casualty and Surety Co. (Aetna) against its insured, O'Rourke Bros., Inc. (O'Rourke), seeking to determine insurance coverage.  O'Rourke filed a counter-complaint against Aetna and brought a third-party complaint against American Manufacturers Mutual Insurance Co. (American Manufacturers), another insurer of O'Rourke, seeking declaratory judgment.  All of the parties filed motions for summary judgment.  The trial court granted summary judgment in favor of American Manufacturers, finding that it owed O'Rourke no duty to defend or indemnify.  The court granted partial summary judgment for Aetna and partial summary judgment for O'Rourke, finding that Aetna had no duty to defend or indemnify O'Rourke under its commercial general liability (CGL) policy but had a duty to defend and indemnify O'Rourke under its commercial excess liability (CEL) policy.  The court ordered Aetna to reimburse O'Rourke for the money O'Rourke paid in settlements and further ordered Aetna to pay O'Rourke's attorney fees in the declaratory judgment action.  O'Rourke appealed, and Aetna cross-appealed.  We affirm in part, reverse in part, and remand. 

BACKGROUND

O'Rourke is a consumer electronics distributor headquartered in Moline, Illinois.  In the early 1990s O'Rourke entered into an agreement with American General Finance (AGF) in which AGF agreed to finance satellite systems that O'Rourke sold in Alabama and Mississippi.  Pursuant to their agreement, O'Rourke established a credit card purchasing program for its prospective customers.  In 1995, O'Rourke was named as a defendant in numerous consumer cases filed in Mississippi and Alabama involving the sale and financing of satellite systems.  
The complaints in those cases alleged that O'Rourke made misrepresentations to its customers, committed fraud, breached contracts and violated truth-in-lending statutes.  The complainants claimed that they suffered mental anguish as a result of O'Rourke's scheme to defraud them.  Some of the plaintiffs also claimed that they suffered damage to credit or a fear of damage to credit because of O'Rourke's actions.  When the complaints were filed against O'Rourke, O'Rourke sought coverage from its insurers, Aetna and American Manufacturers.  

Aetna issued CGL and CEL policies to O'Rourke for the contract periods from January 1, 1993 to January 1, 1994, and January 1, 1994 to January 1, 1995.  American Manufacturers issued CGL and CEL policies to O'Rourke for the policy period from December 31, 1994 to December 31, 1995.  The CGL policies provided coverage of up to $1 million, and the CEL policies provided coverage of up to $3 million each. 

The CGL policies issued by Aetna and American Manufacturers provide coverage for "'personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by you *** if the offense was committed in the 'coverage territory' during the policy period."  Under the policies, "'[p]ersonal injury' means injury, other than 'bodily injury', arising out of *** oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."  The CGL policies also provide coverage for "bodily injury," which is defined as "injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

The CEL policies issued by Aetna and American Manufacturers provide coverage for specific and defined occurrences not covered by the CGL policies and provide excess coverage when the underlying limits of the CGL policies have been exhausted.  
The CEL policies issued by Aetna and American Manufacturers provide coverage for "bodily injury," "personal injury" and "advertising injury."  "Bodily injury" has the same definition in both American Manufacturer's CEL and CGL policies.  Aetna, however, defines "bodily injury" more expansively in its CEL policy to include "shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time." 

     The Aetna CEL policy provides that Aetna will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage, "personal injury" or advertising injury to which the insurance applies.  Under the policy, the "[a]pplicable underlying limit" is the amount stated in the Declarations as the "retained limit."  The amount of the retained limit identified in the Declarations page is $10,000 for "any one occurrence or offense."  The CEL policy provides that the insurance applies only to bodily injury or property damage that occurs during the policy period that is caused by an "occurrence."  
The CEL policy defines "occurrence" as "an accident including continuous or repeated exposure to substantially the same general harmful conditions."  Aetna's CEL policy specifically excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.      
 

O'Rourke gave notice of the claims to Aetna and American Manufacturers in October 1995, and submitted the complaints to them.  Both companies denied coverage.  In September 1996, Aetna filed a declaratory judgment action to resolve the coverage issues, and O'Rourke filed a counter-complaint for declaratory judgment against Aetna and a third-party complaint against American Manufacturers.  O'Rourke filed a motion for partial summary judgment against Aetna and American Manufacturers.  Aetna filed a counter-motion for summary judgment, and American Manufacturers filed a cross-motion for summary judgment.  

As a result of these motions, the trial court granted summary judgment in favor of American Manufacturers, ruling that American Manufacturers did not have a duty to defend or indemnify O'Rourke under its CGL or CEL policies.  The trial court granted partial summary judgment to Aetna, concluding that it had no duty to defend or indemnify O'Rourke under its CGL policy and granted partial summary judgment to O'Rourke, finding that Aetna had a duty to defend and indemnify O'Rourke under its CEL policy.  The court also granted partial summary judgment to O'Rourke against Aetna for any further relief to which O'Rourke may be entitled.  The trial court's orders expressly reserved for ruling whether O'Rourke would be entitled to attorney fees and O'Rourke's right of reimbursement for indemnity paid in settlement of the underlying suits subject to the retained limit in the CEL policy, if applicable.   

Later, O'Rourke filed a second motion for partial summary judgment seeking reimbursement for attorney fees for the declaratory judgment action and interest 
on amounts advanced by O'Rourke for defense costs and settlement of certain suits.  The trial court granted the motion as to attorneys fees but did not address the issue of interest.  O'Rourke filed a third motion for partial summary judgment seeking indemnity for all settlements paid by O'Rourke, and that motion was granted.  The court ordered Aetna to pay full reimbursement to O'Rourke for the cases that O'Rourke had settled and precluded Aetna from asserting the retained limit as a coverage defense. 

The trial court determined that there was no just reason for delaying enforcement or appeal of the orders, and O'Rourke appealed pursuant to Supreme Court Rule 304(a).  155 Ill. 2d R. 304(a).  O'Rourke specifically appealed the court's finding that Aetna and American Manufacturers did not owe a duty to defend or indemnify under their CGL policies.  In its cross-appeal, Aetna claims the court erred by (1) finding that Aetna had a duty to defend and indemnify under the CEL policy issued to O'Rourke, (2) holding that the retained limits set forth in the CEL policy was inapplicable to O'Rourke's claims, and (3) granting O'Rourke attorney fees incurred in the declaratory judgment action.  

DISCUSSION

I.  Coverage under the CGL policies

This court conducts a 
de
 
novo
 review of the trial court's grant of summary judgment.  
Landeros v. Equity Property & Development
, 321 Ill. App. 3d 57, 63, 747 N.E.2d 391, 398 (2001). 
 
Although the trial court found that neither Aetna nor American Manufacturers had a duty to defend under their CGL policies, O'Rourke claims that the allegations of damage to credit reputation contained in some of the complaints are sufficient to invoke a duty to defend under both Aetna's and American Manufacturers' GCL policies.  O'Rourke argues that the claims of injury to credit reputation establish claims of slander or libel against O'Rourke and, therefore, fall under the GCL policies, which cover personal injury "arising out of *** oral or written publication of material that slanders or libels a person or organization or disparages."

 To determine an insurer's duty to defend its insured, courts must look to the allegations of the underlying complaints, and if the complaints allege facts within or potentially within policy coverage, the insurer is obligated to defend its insured. 
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
  144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991).  However, the factual allegations must be sufficient to make this determination.   
Thornton v. Paul
, 74 Ill. 2d 132, 161, 384 N.E.2d 335, 347 (1978).

      Of the more than one hundred suits filed against O'Rourke, three complaints allege injury to credit reputation.  Two of the complaints state that the complainant's "credit reputation has been damaged."  The other complaint states that the "Plaintiffs' credit records have been jeopardized and in some cases, ruined, by the action of the Defendants" and seeks an injunction "requiring the Defendants to remove any negative reporting by them to any credit bureau or credit agency with respect to the Plaintiffs." 

An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.  
Conway v. Country Casualty Insurance Co.
, 92 Ill. 2d 388, 393, 442 N.E.2d 245, 247 (1982).  Here, it is clear that the complaints fail to state facts which establish that O'Rourke committed defamation.  Under the laws of Mississippi and Alabama, where the underlying complaints were filed, the following elements must be alleged to state a cause of action for defamation: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.  
McCraig v. Talladega Publishing Co.
, 544 So. 2d 875, 877 (Alab. 1989); 
Hamilton v. Hammons
, 792 So. 2d 956, 959 (Miss. 2001).  

 Of the complaints set out above, none of them allege that O'Rourke made a false statement regarding the complainants.  Although one complaint does imply that O'Rourke communicated some information to credit bureaus or credit agencies, that complaint does not allege that such information was false.  Because the complaints do not allege that the damage resulted from any false statements made by O'Rourke, the complaints fail to set forth facts that bring the claim potentially within the coverage of the policies.  See 
Chicago Title and Trust Co. v. Hartford Fire Insurance Co.
, 424 F.Supp. 830, 833 (N.D.Ill. 1976) (explaining that a complaint devoid of allegations that insured communicated something about the plaintiffs' good name or reputation to a third person did not invoke insurer's duty to defend for libel or slander).

II. Coverage under Aetna's CEL policy 

This court reviews 
de
 
novo
 the trial court's partial grant of summary judgment to O'Rourke, in which the court concluded that Aetna had a duty to defend and indemnify under its CEL policy.  See 
Landeros
, 321 Ill. App. 3d at 63, 747 N.E.2d at 398.
  Aetna claims the trial court's conclusion was erroneous because (1) the injuries suffered by O'Rourke's customers did not result from an "occurrence;" (2) O'Rourke should have expected its customers' injuries; (3) the complaints did not state that the injuries occurred during policy periods; and (4) Aetna did not necessarily have a duty to indemnify simply because it had a duty to defend.  

The CEL policy Aetna issued to O'Rourke provides coverage for bodily injury caused by an "occurrence."  The policy defines an occurrence as "an accident including continuous or repeated exposure to substantially the same general harmful conditions."  When construing insurance policies, courts define an accident as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character."  
Monticello Insurance Co. v. Wil-Freds Construction, Inc.
, 277 Ill. App. 3d 697, 703, 661 N.E.2d 451, 455 (1996).  Aetna claims that it does not have a duty to defend or indemnify under the CEL policy because the mental anguish suffered by O'Rourke's customers was foreseeable.

The issue that must be determined in deciding whether there is an accident under a liability insurance policy is whether the injury was expected or intended, not whether the acts were performed intentionally.  
Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons
, 315 Ill. App. 3d 552, 561, 734 N.E.2d 50, 57 (2000).  The determination of whether an occurrence qualifies as an accident requires a review of the matter from the objective foreseeability of the insured to determine whether the contingency is known to all sensible people as likely to follow naturally from the insured's conduct.  
State Farm Fire and Casualty Co. v. Martin
, 296 Ill. App. 3d 466, 471, 694 N.E.2d 1058, 1062 (1998). 

Although the 
economic
 
injuries
 that O'Rourke's customers suffered followed naturally from O'Rourke's defrauding scheme, these injuries are not recoverable under the terms of the insurance policy.  The bodily injury covered under the CEL policy is the 
mental
 
anguish
 that the customers suffered.  Because Aetna failed to establish that the emotional injuries were the natural and ordinary consequences of O'Rourke's actions, Aetna had a duty to defend under the CEL policy.  See 
Bonnie Owen Realty v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 812, 816, 670 N.E.2d 1182, 1185 (1996) (explaining that any doubts about coverage are to be resolved in insured's favor in determining whether a duty to defend exists).     

In a variation on the preceding argument, Aetna claims it did not owe a duty to defend because the injuries that O'Rourke's customers sustained should have been expected by O'Rourke.  The CEL policy provides an exclusion from coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." 

If the insured relies on an exclusionary provision in denying duty to defend, it must be clear and free from doubt that the policy's exclusion prevents coverage.  
Atlantic Mutual
, 315 Ill. App. 3d at 560, 734 N.E.2d at 56 (2000).  Here, it is not clear from the complaint that O'Rourke expected or intended any bodily injuries to result from its satellite-selling scheme.  Even if O'Rourke should have expected the injury of its customers, that is not enough to prove that the exclusion applies because the exclusion employs a subjective standard that requires O'Rourke to actually expect or intend the mental anguish suffered by its customers.  Since it is not clear that O'Rourke intended or expected to cause the injuries to the customers, the policy exclusion will not prevent coverage. 

Aetna also claims that it should not be required to defend or indemnify O'Rourke because the complaints do not allege that the complainants' injuries occurred during the policy periods.  O'Rourke concedes that Aetna does not have a duty to defend two of the lawsuits because those involved the sale of satellites after the policy expired on January 1, 1995.  Although the remaining complaints identify dates of sales transactions during the Aetna policy periods, they do not identify when the customers experienced their mental anguish. 

An insurer owes a duty to defend whenever a complaint alleges facts that are 
potentially
 within policy coverage. 
Wilkin Insulation Co.
  144 Ill. 2d at 73, 578 N.E.2d at 930.  Because the satellites were sold within the policy periods, the injuries could have potentially occurred within that period since the injuries arose from the sale of the satellites.  That possibility is enough to trigger Aetna's duty to defend.  See 
Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.
, 304 Ill. App. 3d 734, 710 N.E.2d 132 (1999);  
Petersen Sand and Gravel, Inc. v. Maryland Casualty Co.
, 881 F.Supp. 309 (N.D. Ill. 1995) (explaining that insurer was obligated to defend where it appeared that injury at least potentially occurred within the policy period).

Finally, Aetna claims that even if it owed O'Rourke a duty to defend, that does not necessarily trigger a duty to indemnify.  It is true that an insurer's duty to defend is broader than its duty to indemnify.  
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 393-94, 620 N.E.2d 1073, 1081 (1993).  Although an insurer can normally dispute coverage even after a court determines there is a duty to defend, when 
an insurer breaches its duty to defend, the estoppel doctrine has broad application and operates to bar the insurer from raising policy defenses to coverage, even defenses that may have been successful had the insurer not breached its duty to defend.  
Employers Insurance of Wausau v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 151-152, 708 N.E.2d 1122, 1135 (1999).

When an insurer fails to seek a declaratory judgment as to its obligations and rights in a timely manner or defend under a reservation of rights, it has breached its duty to defend.  
Ehlco
, 186 Ill. 2d at 150-151, 708 N.E.2d at 1135.  The most important factor in determining whether an insurer has breached its duty to defend is not the raw chronological delay in an insurer's filing a declaratory judgment action, but whether the insurer waited until trial or settlement was imminent.  
Westchester Fire Insurance Co. v. Heileman Brewing Co.
, 321 Ill. App. 3d 622, 634, 747 N.E.2d 955, 965 (2001).   

In the instant case, Aetna breached its duty to defend at least some of the underlying suits because Aetna did not bring the declaratory judgment action until 11 months after it was notified of the first claims by O'Rourke.  By that time, four of the underlying suits had been settled and many other suits were filed with the understanding that they would be settled in the near future.  However, many of the suits against O'Rourke were not filed until after or shortly before Aetna filed its declaratory judgment action.
 
 Aetna cannot be found to have breached its duty to defend those cases in which Aetna sought declaratory judgment in a timely manner.  Consequently, we find it necessary to remand to the trial court to determine in which cases Aetna breached its duty to defend.

For those cases in which Aetna breached its duty to defend, Aetna cannot raise defenses to coverage.  See 
Central Mutual Insurance Co. v. Kammerling
, 212 Ill. App. 3d 744, 571 N.E.2d 806 (1991) (holding that the insurer was estopped from asserting coverage defenses when it waited to file a declaratory action until 10 months after it had notice of the claim and several months after it had notice of a potential settlement of the underlying litigation).
 
 Consequently, Aetna is required to indemnify O'Rourke for the full amount of the settlements in those cases.

For those cases in which the trial court determines that Aetna did not breach its duty to defend, Aetna should be allowed to raise coverage defenses.  See 
Employers Insurance
, 186 Ill. 2d at 151-52, 708 N.E.2d at 1135 (holding that an insurer can normally dispute coverage even after a court determines there is a duty to defend).  The court should then determine whether any defenses to coverage apply which would absolve Aetna of its responsibility to indemnify O'Rourke.  Additionally, we remand to the trial court to determine what defense costs need to be paid by Aetna based on Aetna's failure to defend the suits against O'Rourke.

III. Retained limits

 The trial court determined that Aetna could not apply the $10,000 retained limits from its CEL policy to O'Rourke's claims.  Aetna argues that the retained limit is an express term of the policy and should be treated like a deductible applying to every claim against O'Rourke so that Aetna is only required to pay for settlements that exceed $10,000.  O'Rourke agreed in oral arguments that the retained limit should be applied once to reduce the total amount that Aetna owes O'Rourke by $10,000, but argued that the retained limit should not apply to each and every claim against O'Rourke. 

Because O'Rourke concedes that the retained limit should be applied once to reduce the total amount Aetna owes O'Rourke, we conclude that the trial court erred by refusing to apply the retained limit at all.  However, we further find that Aetna
 should not be allowed to use the retained limit more than once.  The insurance policy provides that the retained limit should be applied to "any one occurrence or offense."  The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  

We conclude that O'Rourke's solicitation campaign to sell the satellite systems was one "occurrence."  Illinois has followed the majority of jurisdictions which conclude that the number of occurrences is determined by referring to the cause or the causes of the damage rather than to the number of individual claims or injuries.  
Illinois National Insurance Co. v. Szczepkowicz
, 185 Ill. App. 3d 1091 1094-95, 542 N.E.2d 90 (1989).  In this case, the cause of the customers' injuries was the same -- O'Rourke's fraudulent sales campaign.  

In 
United States Gypsum Co. v. Admiral Insurance Co.
, 268 Ill. App. 3d 598, 651 643 N.E.2d 1226, 1258 (1994), the insurance policy at issue defined "occurrence" the same as it was defined in Aetna's policy to include "continuous or repeated exposure to substantially the same condition***."  In that case, the court held that Gypsum's continuing process of manufacturing and selling asbestos-containing products constituted one occurrence  even though there were approximately 250 claims filed against Gypsum.  
Gypsum
, 268 Ill. App. 3d at 652, 643 N.E.2d at 1259
.  
Likewise, in this case, it was O'Rourke's continuing process of soliciting the satellite systems that gave rise to the plaintiffs' claims.  Merely because there are many claims against O'Rouke involving different plaintiffs, as in 
Gypsum
, that does not mean that there were many occurrences.  Consequently, we conclude that O'Rourke's acts constituted only one "occurrence," and therefore the retained limit should apply only once.

Additionally, allowing Aetna to apply the retained limit to each and every settlement by every plaintiff would, in effect, deny O'Rourke all coverage and make Aetna's CEL policy coverage illusory.  See 
W.E. Erickson Construction, Inc. v. Chicago Title Insurance Co.
, 266 Ill. App. 3d 905, 909, 641 N.E.2d 861, 864 (1994) (explaining that an illusory promise is one that appears to be a promise, but closer examination reveals that the promisor has not promised to do anything.)  All of the plaintiffs to date have settled their cases against O'Rourke for amounts ranging from $0 to $6,000, so applying the $10,000 limit to each of those settlements would make O'Rourke liable for all of the damage awards and Aetna liable for none of them.  Consequently, we hold that Aetna should not be able to apply the retained limit to each and every claim against O'Rourke.  

IV.  Attorney fees in the declaratory judgment action 

A trial court's award of attorney fees will not be overturned absent an abuse of discretion.  
Westchester Fire Insurance Co.
, 321 Ill. App. 3d at 636, 747 N.E. 2d at 967.  A court abuses its discretion when it acts arbitrarily, fails to employ conscientious judgment or ignores recognized principles of law.  
Roberts v. Illinois Power
, 311 Ill. App. 3d 458, 461, 723 N.E.2d 1180, 1183 (2000).

Illinois adheres to the general American rule that the prevailing party in a lawsuit must bear the costs of litigation, unless a statutory provision, an agreement between the parties, or an equitable exception provides otherwise.  
Brundidge v. Glendale Federal Bank
, 168 Ill. 2d 235, 238, 659 N.E.2d 909, 911 (1995).  O'Rourke claims that the trial court's award of attorney fees was appropriate based on (1) the Illinois declaratory judgment statute, (2) breach of the insurance contract, (3) a new equitable exception that should be created, and (4) the language of the Aetna insurance policy, which provides that Aetna will pay all "reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit.'"  

 
Illinois courts have uniformly held that absent vexatious behavior by the insurer, the insured cannot recover its attorney fees incurred in a declaratory judgment action to establish coverage.  See 
Westchester Fire Insurance Co.
, 321 Ill. App. 3d at 638, 747 N.E.2d at 968-69; see also 
Bonnie Owen Realty
, 283 Ill. App. 3d 812, 670 N.E.2d 1182 (expressly rejecting that an insurer should be required to pay insured's attorney fees based on a breach of contract); 
International Insurance Co., v. Rollprint Packaging Products, Inc.
, 312 Ill. App. 3d 998, 1015, 728 N.E.2d 680, 694 (2000), (holding that an insurance policy providing that the insurance company would pay "[a]ll reasonable expenses incurred by the insured at our request" did not establish an agreement that the insurer would cover attorneys fees and costs to the insured in a declaratory action).  In this case, there was no finding that Aetna acted vexatiously in not defending the claims brought against O'Rourke, and no such finding was appropriate because there were genuine coverage issues.  Therefore, the trial court's award of attorney fees in the declaratory judgment action was inappropriate and is reversed.  

V. Prejudgment interest   

In its second motion for partial summary judgment, O'Rourke requested attorneys fees and costs incurred in the declaratory judgment action as well as interest on the amounts advanced by O'Rourke for defense costs and settlements of certain suits.  The trial court's order stated that "O'Rourke's Motion for Partial Summary Judgment as to attorneys' fees is granted ***."  However, the order did not make any mention of the interest that O'Rourke requested in its motion.  Because we find this order is ambiguous as to whether prejudgment interest was granted by the trial court, we remand to the trial court for a determination of whether prejudgment interest should be awarded to O'Rourke.  We find that remand is appropriate because an award of prejudgment interest is within the trial court's discretion.  
Liberty Mutual Insurance Co. v. Westfield Insurance Co.
, 301 Ill. App. 3d 49, 55, 703 N.E.2d 439, 443 (1998).  

CONCLUSION
 

For the foregoing reasons, we affirm the trial court's grant of summary judgment to American Manufacturers and partial summary judgment to Aetna, holding they had no duty to defend under their CGL policies.  We also affirm in part the trial court's grant of partial summary judgment to O'Rourke, finding that Aetna owed a duty to defend under its CEL policy and must indemnify O'Rourke for the settlements it made in the cases in which Aetna breached its duty to defend.  We remand for the court to determine whether Aetna has valid coverage defenses in cases in which Aetna timely filed its declaratory judgment action.  We also remand for the trial court to determine the amount of attorney fees Aetna owes O'Rourke for defending the suits that Aetna had a duty to defend.  We reverse the trial court's finding that the "retained limits" cannot be raised at all and hold that the $10,000 retained limit can be applied once to the entire amount that Aetna owes O'Rourke.  Further, we reverse the trial court's award of attorney fees and costs 
to O'Rourke in the declaratory judgment action.  Finally, we remand on the issue of O'Rourke's request for prejudgment interest.   

Affirmed in part, reversed in part and remanded.  

BRESLIN, J, and LYTTON, PJ, concurring.