No. 3-05-0158

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | |
|---|---|
| L.A. CONNECTION, | ) Appeal from the Circuit Court |
| | ) of the 10th Judicial Circuit |
| Plaintiff-Appellant, | ) Peoria County, Illinois |
| | ) |
| v. | ) |
| | ) |
| PENN-AMERICA INSURANCE CO., | ) |
| | ) |
| Defendant-Appellee, | )) No. 02-MR-236 |
| | )) |
| and | )) |
| | )) |
| MARVIN E. WHITE, Administrator of the | ) |
| Estate of MARVIN E. WHITE, JR., | |
| Deceased, | Honorable |
| | John A. Barra, |
| Defendant. | Judge, Presiding. |

JUSTICE SLATER delivered the opinion of the court:

Marvin E. White, Jr., was shot and killed on the dance floor of plaintiff L.A. Connection, a Peoria bar, on November 11, 2001. White's estate filed a wrongful death action against plaintiff, which tendered defense of the claim to defendant Penn-America Insurance Company ("Penn"). Penn declined to defend or indemnify plaintiff, primarily on the basis of an "assault and battery" exclusion contained in the commercial general liability policy issued to plaintiff. Plaintiff thereafter filed a declaratory judgment action to determine Penn's

obligations under the policy.  The trial court granted summary judgment to Penn and this appeal followed.  We affirm.

Facts

Plaintiff was served with a complaint by White's estate on May 28, 2002.  The complaint alleged that Edward Jackson entered plaintiff's premises on November 11, 2001, armed with a handgun and thereafter shot and killed Marvin White.  The complaint asserted that plaintiff was negligent in allowing Jackson to enter while armed, in failing to provide security, and in failing to search patrons for weapons.

Plaintiff tendered defense of the suit to Penn on or about June 5, 2002, and Penn denied coverage by letter on June 11.  Plaintiff filed the instant declaratory judgment action on August 13, 2002, and Penn filed its answer and cross-claim for declaratory relief on October 3.  Plaintiff filed an answer to defendant's cross-claim on November 4, 2002.  The next filing contained in the record is Penn's April 1, 2003, motion for a default judgment against plaintiff due to its alleged failure to respond to Penn's cross-claim.  It is unclear whether Penn did not receive the November 4 answer filed by plaintiff or if it simply made a mistake.  In any event, the filing of the default motion is significant, for reasons which will be explained below.  On August 24, 2004, plaintiff filed a motion for summary judgment, to which Penn responded by filing its own summary judgment motion on November 18, 2004.

Citing Korte Construction Co. v. American States Insurance, 322 Ill. App. 3d 451, 458, 750 N.E.2d 764, 769-70 (2001), for the proposition that "there need not be a race

to the courthouse and the insured should not be able to estop the insurer" by being the first to file a declaratory judgment action, the trial court ruled in favor of Penn:

> "The [c]ourt finds that the defendant insurance company, by filing its answer and cross-claim when it did, took action within a reasonable time of the demand by the insured. The [c]ourt can therefore look beyond the four corners of the original complaint to determine whether it had a duty to defend. Under the uncontested facts presented, the [c]ourt finds that the injuries were caused as a result of a 'battery'. The incident therefore was excluded by the insurance contract and was not covered by it."

## Analysis

Plaintiff contends that the trial court should have found that Penn was estopped from relying on the assault and battery exclusion contained in the insurance policy due to its breach of the duty to defend. We disagree.

## The Estoppel Doctrine

The estoppel doctrine provides that an insurer presented with a claim may not simply refuse the defend its insured under a belief that no coverage exists; it must either defend the lawsuit under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to take either of those steps and is found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses, even those that might have otherwise been successful. Employers Insurance v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 708 N.E.2d 1122 (1999); Clemmons v. Travelers Insurance Co., 88 Ill. 2d 469, 430 N.E.2d 1104 (1981).

3

Duty to Defend

The initial step in an estoppel analysis is determining whether a duty to defend exists. See Ehlco, 186 Ill. 2d at 151, 708 N.E.2d at 1135. The duty to defend is determined solely from the language of the underlying complaint and the insurance policy. Clemmons, 88 Ill. 2d 469, 430 N.E.2d 1104; Thornton v. Paul, 74 Ill. 2d 132, 384 N.E.2d 335 (1978), overruled on other grounds, American Family Mutual Insurance Co. v. Savickas, 193 Ill. 2d 378, 739 N.E.2d 445 (2000). If the complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent (United States Fidelity and Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 578 N.E.2d 926 (1991)), and even if the insurer knows that the allegations are untrue (Thornton, 74 Ill. 2d 132, 384 N.E.2d 335). The complaint and insurance policy must be liberally construed in favor of the insured, and an insurer may not justifiably refuse to defend unless it is clear from the face of the complaint that it fails to state facts which bring the case within, or potentially within, the policy's coverage. Ehlco, 186 Ill. 2d 127, 708 N.E.2d 1122; Wilkin Insulation, 144 Ill. 2d 64, 578 N.E.2d 926.

In this case, the complaint alleged that `plaintiff` was negligent in allowing Edward Jackson to enter the bar while armed with a handgun and in failing to provide security. Thereafter, according to the complaint, Jackson "shot and killed" Marvin White. The general liability policy issued by Penn contained an exclusion for injury or damages "resulting from assault and battery or physical altercations that occur in, on, near, or away from" the insured premises, including damages arising out of the insured's failure to properly supervise or keep the premises in a safe condition. Plaintiff

4

argues that the exclusion does not necessarily apply because the complaint does not allege an <u>intentional</u> shooting and could describe an <u>accidental</u> discharge of the firearm. We agree that, construed most liberally in favor of the `plaintiff,` the allegations of the complaint are not, on their face, <u>clearly</u> encompassed by the assault and battery exclusion and therefore are <u>potentially</u> within the policy's coverage. Accordingly, Penn had a duty to defend its insured which required it to either defend under a reservation of rights or seek a declaratory judgment of no coverage. <u>Ehlco</u>, 186 Ill. 2d 127, 708 N.E.2d 1122. The trial court ruled that this duty was discharged when Penn filed its answer and cross-claim in response to `plaintiff's declaratory judgment action, and we agree.`

Effect of Declaratory Judgment Action by the Insured

Although our supreme court has never addressed the issue, the appellate courts of this state have repeatedly held that the initiation of a declaratory judgment action by the <u>insured</u>, rather than the insurer, is sufficient to avoid estoppel. As this court noted nearly 25 years ago, "[i]t is the fact of the proceeding itself, and not the identity of the party initiating the proceeding, that is of legal import." <u>Ayers v. Bituminous Insurance Co.</u>, 100 Ill. App. 3d 33, 35 n.1, 424 N.E.2d 1316, 1318 n.1 (1981); see <u>Pekin Insurance Co. v. Allstate Insurance Co.</u>, 329 Ill. App. 3d 46, 768 N.E.2d 211 (2002) (identity of party initiating declaratory judgment action is irrelevant); <u>Waitzman v. Classic Syndicate, Inc.</u>, 271 Ill. App. 3d 246, 648 N.E.2d 104 (1995) (same); <u>Sears, Roebuck & Co. v. Seneca Insurance Co.</u>, 254 Ill. App. 3d 686, 627 N.E.2d 173 (1993) (same); <u>Village of Melrose</u>

5

Park v. Nautilus Insurance Co., 214 Ill. App. 3d 864, 574 N.E.2d 198 (1991) (same);

Louis Marsch, Inc. v. Pekin Insurance Co., 140 Ill. App. 3d 1079, 491 N.E.2d 432 (1985)

(same); see also Farmers Automobile Insurance Ass'n v. Country Mutual Insurance Co.,

309 Ill. App. 3d 694, 722 N.E.2d 1228 (2000) (no estoppel where insurer filed

counterclaim prior to judgment in underlying suit); SportMart, Inc. v. Daisy

Manufacturing Co., 268 Ill. App. 3d 974, 645 N.E.2d 360 (1994) (no estoppel where

insured did not allege it was prejudiced by fact that it initiated declaratory judgment

action). Although this position has been widely adopted, contrary authority exists. See

Korte Construction, 322 Ill. App. 3d 451, 750 N.E.2d 764 (holding insurer was estopped

where insured filed declaratory judgment actions 12 months after underlying suit was

filed); Shell Oil Co. v. AC&S, Inc., 271 Ill. App. 3d 898, 649 N.E.2d 946 (1995) (insurer

was estopped for failing to take legal action prior to insured filing declaratory judgment

action); Consolidated Rail Corp. v. Liberty Mutual Insurance Co., 92 Ill. App. 3d 1066,

416 N.E.2d 758 (1981) (insurer was estopped despite declaratory judgment action filed

by insured); see also County of Massac v. United States Fidelity & Guaranty Co., 113 Ill.

App. 3d 35, 446 N.E.2d 584 (1983) (finding insurer estopped where it responded to

insured's declaratory judgment action by filing motion to dismiss, thereby contesting

insured's efforts to construe policy). We continue to adhere to our decision in Ayers, not

only because it is supported by the weight of authority, but also because of the potential

consequences of a contrary rule. If an insured could prevent an insurer from raising

valid policy defenses by simply filing a declaratory judgment action immediately upon

denial of coverage, we would indeed be sponsoring a race to the courthouse. We

decline to do so, and we find that the trial court properly ruled that Penn had fulfilled its

6

obligations by filing its answer and cross-claim to `plaintiff's declaratory action.`

Timing Issues

The final step in the estoppel analysis, after finding the existence of a duty to defend and that a declaratory judgment action has been filed, is determining whether the insurer acted "promptly" (see <u>Household International, Inc. v. Liberty Mutual Insurance Co.</u>, 321 Ill. App. 3d 859, 869, 749 N.E.2d 1, 9 (2001) (describing <u>Ehlco</u> as requiring insured to "promptly" litigate)) or in a "timely manner" (see <u>Aetna Casualty & Surety Co. v. O'Rourke Brothers, Inc.</u>, 333 Ill. App. 3d 871, 880, 776 N.E.2d 588, 596 (2002) (insurer must seek declaratory judgment in a "timely manner," citing <u>Ehlco</u>)) in filing or responding to the declaratory action. The issue of what constitutes "promptness" or "timeliness" in this context has not been definitively resolved, although two supreme court decisions help define the outer boundaries. In <u>Ehlco</u>, the court held that a declaratory judgment action filed after the underlying lawsuit has been resolved by judgment or settlement is untimely as a matter of law, resulting in estoppel. <u>Ehlco</u>, 186 Ill. 2d at 157, 708 N.E.2d at 1138. Less than three months later, the court ruled that "[a]n insurer will not be estopped from denying coverage merely because the underlying case proceeds to judgment before the declaratory judgment action is resolved." <u>State Farm Fire & Casualty Co. v. Martin</u>, 186 Ill. 2d 367, 374, 710 N.E.2d 1228, 1232 (1999). Thus it is clear that, to avoid estoppel, a declaratory judgment action must commence before the underlying suit has been

7

resolved, but the declaratory action need not outrace the lawsuit to the judgment "finish line."

Faced with these rather vague contours of timeliness, the courts of this state have generally applied one of three standards to measure an insurer's promptness. See S. Nardoni & J. Vishneski, The Illinois Estoppel Doctrine Revisited:  How Promptly must an Insurer Act?, 24 N. Ill. U. L. Rev. 211, 220-24 (2004).  Some cases have deemed a declaratory judgment action timely as long as it was filed before the underlying lawsuit ends.  See Pekin Insurance, 329 Ill. App. 3d 46, 768 N.E.2d 211; Farmers Automobile Insurance Ass'n, 309 Ill. App. 3d 694, 722 N.E.2d 1228; 24 N. Ill. U. L. Rev. at 221-22.  Other cases have focused, not on the "raw chronological delay," but on whether the insured "waited until trial or settlement was imminent."  O'Rourke, 333 Ill. App. 3d at 880, 776 N.E.2d at 596; see also Westchester Fire Insurance Co. v. G. Heileman Brewing Co., 321 Ill. App. 3d 622, 634, 747 N.E.2d 955, 965 (2001);  24 N. Ill. U. L. Rev. at 220-23 (describing the "imminent resolution" test).  Still others have required an insurer to seek declaratory relief within a "reasonable time" of learning of the underlying lawsuit.  See, e.g., West American Insurance Co. v. J.R. Construction Co., 334 Ill. App. 3d 75, 777 N.E.2d 610 (2002) (insurer was estopped when it filed declaratory judgment action 21 months after defense was tendered); Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc., 332 Ill. App. 3d 326, 341-42, 773 N.E.2d 707, 719-20 (2002) (rejecting "anytime before resolution of underlying lawsuit test" in favor of "reasonable time from date of notice to insurer" test); see also 24 N. Ill. U. L. Rev. at 223-230 (advocating adoption of reasonable time test).

8

In O'Rourke, this court stated that the "most important factor" in determining whether an insurer had breached its duty to defend was not the mere chronological delay in filing for declaratory relief, "but whether the insurer waited until trial or settlement was imminent." O'Rourke, 333 Ill. App. 3d at 880, 776 N.E.2d at 596. That statement must be viewed in the factual context of the case, rather than as a blanket adoption of the so-called "imminent resolution" test. See 24 N. Ill. U. L. Rev. at 223 (citing O'Rourke as following that test). By the time the insurer in O'Rourke filed for declaratory relief, four of the underlying suits had been settled and many others were nearing settlement. 333 Ill. App. 3d at 880, 776 N.E.2d at 596. Under those circumstances, emphasizing the looming termination of litigation over the mere passage of time was appropriate. However, each case must be decided on its own facts, and for that reason we favor the more flexible "reasonable time" test. We agree with the commentators cited above that the reasonable time test promotes quick action by insurers and best serves the goal of the estoppel doctrine - enforcement of the duty to defend (24 N. Ill. U. L. Rev. at 224-25; see Ehlco, 186 Ill. 2d at 154, 708 N.E.2d at 1136). That duty is a "fundamental" obligation of an insurer. Ehlco, 186 Ill. 2d at 151, 708 N.E.2d at 1135.

We conclude that, under the reasonable time test, Penn did not breach its duty to defend. Plaintiff tendered defense of the suit to Penn on June 5, 2002, and plaintiff subsequently filed its declaratory judgment action on August 13, a little more than two months later. Penn filed its answer and cross-claim less than two months after that. Plaintiff has not cited, and our research has not revealed, any case holding that an insurer breached the duty to defend where a declaratory judgment action was

9

commenced within four months. On the contrary, courts have declined to apply estoppel where the time period between notification to the insurer of the underlying suit and the filing of a declaratory judgment action exceeded that presented here. See Westchester Fire Insurance Co., 321 Ill. App. 3d 622, 747 N.E.2d 955 (six months); Sears, Roebuck & Co., 254 Ill. App. 3d 686, 627 N.E.2d 173 (seven months). We discern no reason to find the relatively brief passage of time at issue here as anything other than reasonable.

Plaintiff also argues that estoppel should be applied because even after plaintiff filed its declaratory action, Penn failed to take steps to advance the litigation and remained "virtually idle" for two years prior to plaintiff's filing of its motion for summary judgment. We disagree. Penn responded promptly to plaintiff's declaratory judgment action by filing its answer and cross-claim within two months. Thereafter, Penn did not remain "idle"; it filed a motion for default judgment within six months, premised on its apparently mistaken belief that plaintiff had failed to respond to Penn's cross-claim. Beyond that, we find that plaintiff's "failure to advance the litigation" argument is waived. Although it was mentioned in a perfunctory fashion in plaintiff's motion for summary judgment, there is no indication that it was argued to the trial court. "[A]n issue not presented to or considered by the trial court cannot be raised for the first time on review." In re Marriage of Schneider, 214 Ill. 2d 152, 172, 824 N.E.2d 177, 189 (2005).

10

Assault and Battery Exclusion

Finally, having determined that Penn is not estopped from raising policy defense, we consider the effect of the assault and battery exclusion contained in the insurance policy.  In doing so, we are no longer limited to the allegations of the complaint, but may also consider extrinsic evidence gathered during the discovery process.  See Mutlu v. State Farm Fire & Casualty Co., 337 Ill. App. 3d 420, 785 N.E.2d 951 (2003); Fidelity & Casualty Co. v. Envirodyne Engineers, Inc., 122 Ill. App. 3d 301, 461 N.E.2d 471 (1983).  Deposition testimony contained in the record establishes that Edward Jackson intentionally shot Marvin White while White was on the dance floor of L.A. Connection.  After White fell to the floor, Jackson grabbed a bottle from a table and hit White on the head with it.  Jackson was later arrested and he was subsequently convicted of first degree murder.  See Savickas, 193 Ill. 2d 378, 739 N.E.2d 445 (criminal conviction may collaterally estop insured from relitigating issue decided at criminal trial in subsequent declaratory judgment action).  Jackson's actions are clearly encompassed by the assault and battery exclusion, regardless of whether those terms are defined under the criminal code (see 720 ILCS 5/12-1 (West 2000) (defining assault as placing another in reasonable apprehension of receiving a battery); 720 ILCS 5/12-3 (West 2000) (defining battery as causing bodily harm or making physical contact of an insulting or

11

provoking nature)) or by civil case law (see <u>Britamco</u>

<u>Underwriters, Inc. v. J.O.C. Enterprises, Inc.</u>, 252 Ill. App. 3d 96,

623 N.E.2d 1036 (1993) (defining civil battery as wilful touching

of another or a successful attempt to commit violence on

another)).  Accordingly, the trial court properly granted summary

judgment in favor of Penn.

For the reasons stated above, the judgment of the circuit

court is affirmed.

Affirmed.

LYTTON and BARRY, J.J., concur.