UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TRAVELERS INDEMNITY COMPANY OF
ILLINOIS,
> *Defendant-Appellant,*

> v.

LIBERTY MUTUAL INSURANCE
COMPANY,
> *Defendant-Appellee,*

> and

RYLAND MORTGAGE COMPANY,
> *Plaintiff.*

No. 02-1846

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.
(CA-00-1118-WMN)

Argued: May 8, 2003

Decided: July 18, 2003

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

---

## COUNSEL

**ARGUED:** Dale E. Hausman, WILEY, REIN & FIELDING, L.L.P.,
Washington, D.C., for Appellant. Warren D. Stephens, DECARO,

DORAN, SICILIANO, GALLAGHER & DEBLASIS, L.L.P., Lanham, Maryland, for Appellee. **ON BRIEF:** Jennifer S. Huber, WILEY, REIN & FIELDING, L.L.P., Washington, D.C., for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This is a dispute between two insurance companies over payment for the costs of defense in a suit involving a trip-and-fall accident in which a visitor to a residential duplex building was injured.

On May 28, 1994, Steve Fallen tripped and fell down the back stairway of a duplex in Los Angeles owned by Bruce Stein, apparently sustaining serious injuries. Fallen contends that the stairway was damaged as a result of an earthquake, and none of the several people having an obligation to maintain the building effected repairs.

Shortly before the time of the accident, Columbia Savings and Loan, which financed Stein's purchase of the duplex, failed, and the deed of trust that Columbia held on the duplex passed to Resolution Trust Corporation ("RTC"). RTC, in turn, assigned Columbia Savings and Loan's rights and duties under the deed of trust to State Street Bank, as trustee under a Pooling and Service Agreement, and to Ryland Mortgage, as the servicer of the loan pursuant to the same Agreement. Before Fallen's accident, Stein defaulted on his loan, and State Street foreclosed on the property.

To recover for his injuries, Fallen sued Stein as the party in possession of the building, State Street Bank as the party with ownership and control over the building, and Ryland Mortgage as State Street's agent, alleging that each owed Fallen a duty of care to maintain the

duplex in good order and to repair defects, particularly the damage caused by the earthquake.

When State Street Bank was served with Fallen's suit papers, State Street Bank tendered its defense to Ryland Mortgage pursuant to its servicing agreement under which Ryland "agree[d] to indemnify [State Street] from, and hold it harmless against, any and all losses, liabilities, damages, claims or expenses (including reasonable attorneys' fees) arising in respect of the Servicer's acts or omissions in connection with this Agreement or the Certificates." Ryland then tendered defense of the suit over to its insurer, Travelers Indemnity, and to State Street's insurer, Liberty Mutual. Both denied coverage, and Ryland assumed the costs of defense for the Fallen action, honoring its indemnity agreement with State Street Bank.

Ryland commenced this action against both Travelers Indemnity and Liberty Mutual, contending that Travelers was its principal insurer and owed it a defense of the Fallen action and that Liberty Mutual also owed Ryland a defense as an "other insured" based on Ryland's purported status as State Street's "real estate manager" who was expressly protected under the Liberty Mutual policy insuring State Street. Travelers then reversed its decision and bore the costs of Ryland's defense in the Fallen litigation. It also filed a cross-claim against Liberty Mutual to require it to pay a portion of the defense costs, stating two theories for recovery. First, Travelers asserted that it was entitled to contribution because its insured, Ryland, had borne the cost of defending not only itself but also State Street, Liberty Mutual's insured. Second, it sued as a subrogee to Ryland asserting that Ryland was an "other insured" under the Liberty Mutual policy because Ryland was State Street's "real estate manager."

Although the procedural history of this case is complicated, we need not trace its full history in detail. The district court granted summary judgment to Ryland against Travelers, requiring Travelers to pay the full defense costs incurred by Ryland, and the only rulings challenged on appeal involve Travelers' cross-claim against Liberty Mutual. On Travelers' cross-claim, the district court entered judgment in favor of Liberty Mutual holding (1) that Travelers was not entitled to contribution from Liberty Mutual based on Liberty Mutual's alleged duty to defend State Street or on a theory of equitable subro-

gation; and (2) that Travelers had no subrogation claim via Ryland for coverage under Liberty Mutual's policy. It is from these two rulings that Travelers filed this appeal. For the reasons that follow, we affirm the district court's conclusion that Travelers' claim for contribution must fail as a matter of law, but we vacate its ruling that Travelers did not, as a matter of law, have a subrogation claim based on Ryland's right to coverage under the Liberty Mutual policy. On this latter subrogation claim, we conclude that material questions of fact remain to be resolved.

On Travelers' first claim, that it was entitled to contribution, Travelers contends that because it footed the bill for the defense of both Ryland and State Street and Liberty Mutual had a duty to defend State Street, it is entitled to contribution of one-half of the defense from Liberty Mutual based on the "other insurance" clauses in the insurance contracts and equitable subrogation. The district court rejected this claim, as do we. First, Travelers has no standing to assert directly State Street's rights in the policy issued by Liberty Mutual. Whether Liberty Mutual has a duty to defend State Street under the policy issued to State Street by Liberty Mutual is not a question that may be raised by Travelers, a stranger to that policy insofar as it provides coverage to State Street. Moreover, Travelers is not entitled to contribution under a theory of equitable subrogation, which only applies when one party pays a debt to protect its own interests even though another party is "primarily liable" for the debt. *See Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 519 A.2d 202, 204 (Md. 1987). Travelers has not shown a debt for which any party other than its own insured is "primarily liable," for the indemnification clause required Ryland to indemnify State Street for liability arising out of Ryland's "act or omissions." Even if one interpreted the underlying complaint to create the potential for direct liability for State Street, it would not follow that the defense costs allocable to State Street alone would be costs for which State Street is primarily liable such that it would be inequitable to require Ryland, as indemnitor, to bear them.

Travelers' second claim is based on the notion that it was subrogated to Ryland's position as an "other insured" under the Liberty Mutual policy because the Liberty Mutual policy insured not only State Street but also State Street's "real estate manager." On this claim, the district court concluded that Travelers/Ryland failed to

respond to Liberty Mutual's argument that Ryland was not a real estate manager for State Street but rather the agent of RTC alone. The court stated, "Having found that this argument went entirely unaddressed and unrebutted by Ryland, the Court finds that Liberty Mutual should prevail on the issue."

We have previously made clear, however, that Rule 56(e) does not implement a "default judgment" rule that permits a court to grant summary judgment based solely on the failure of a party to oppose facts asserted by another party. "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

Moreover, in the present case, Travelers' purported failure to respond to the assertion that Ryland was acting as a real estate manager for RTC alone, if it acted as a real estate manager at all, *did not leave the assertion uncontroverted*, as the district court ruled. Travelers *did* submit evidence indicating facts which controverted Liberty Mutual's assertion that any real estate management services were performed only for RTC. Travelers' best evidence of a genuine dispute of material fact is the Pooling Agreement, a 109-page document that defines the relationships among Ryland, State Street, and RTC. When the district court first addressed itself to the "real estate manager" issue, it noted Liberty Mutual's reliance on language in the Agreement providing that "[t]he relationship of the Servicer [i.e., Ryland] . . . to the Trustee [i.e., State Street] under this Agreement is intended by the parties to be that of an independent contractor and not that of a joint venturer, partner or agent." The court reasoned that "Liberty Mutual has not established that despite the Agreement, Ryland was not performing duties normally performed by that of a 'real estate manager.' *That issue presents a material question of fact*, which is disputed by the parties." (Emphasis added). This determination was entirely correct. The court later supplanted this determination with its subsequent ruling that Travelers failed to controvert Liberty Mutual's argument that Ryland acted as a real estate manager, if at all, for RTC only. Liberty Mutual argued that the Pooling Agreement created a contract between Ryland and RTC and a contract between State Street

and RTC, but not a contract between Ryland and State Street. Yet the very language from the Agreement that the district court quoted in the course of making its initial determination demonstrates the infirmity of Liberty Mutual's argument. Because the Agreement defines the relationship between Ryland and State Street as an independent *contractor* relationship, there can be no doubt that there is some formal contractual relationship directly between Ryland and State Street. The question then becomes whether this contractual relationship was one in which Ryland performed as a "real estate manager" for State Street. Because the facts before the district court established that there was a direct contractual relationship between Ryland and State Street under the Pooling Agreement, it was erroneous for the district court to conclude as a matter of law that any "real estate manager" services performed by Ryland would have been performed only for RTC. As the district court properly determined when it first examined this issue, factual development is necessary to resolve this question.

Further factual development may also be necessary to determine the extent to which the Pooling Agreement applies at all. If State Street became the owner of the property through foreclosure before Fallen fell on the property, a question arises as to Ryland's continuing liability as a servicer on *that* property under the Agreement. The typical understanding of a mortgage servicer would lead one to conclude that a mortgage servicer might drop out of the picture completely upon foreclosure. Once foreclosure takes place, there is no longer any mortgage to service. Even if the facts in this case tracked this typical understanding, however, Ryland may remain liable for pre-foreclosure negligence as well as for any post-foreclosure activities that the Agreement obligated it to undertake. For example, the record contains a letter sent by counsel for Ryland to Liberty Mutual that argues for coverage under the "real estate manager" provision. This letter states that "[t]he mortgage servicing agreement and the Fannie Mae guidelines that inform it obviously require Ryland to take possession of, secure, inspect and maintain foreclosed property before the property can be re-sold by a broker." We have no idea what provision of the Agreement or the Fannie Mae guidelines underlay this assertion by counsel for Ryland, let alone what makes the conclusion "obvious," but this letter, the Agreement, and the course of conduct attributed to Ryland in the *Fallen* complaint certainly indicate a genuine

dispute of material fact regarding the nature of the contractual relationship between Ryland and State Street.

Accordingly, we affirm the district court's entry of summary judgment in favor of Liberty Mutual on Travelers' direct claim for contribution and we vacate the district court's entry of summary judgment in favor of Liberty Mutual on Travelers' subrogation claim that Ryland was a "real estate manager" insured by Liberty Mutual's policy. We remand for further proceedings.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*