In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 08-3572 & 08-3773

SANTA'S BEST CRAFT, LLC;
SANTA'S BEST; and H.S. CRAFT
MANUFACTURING CO.,

*Plaintiffs-Appellants/*
*Cross-Appellees,*

*v.*

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

*Defendant-Appellee/*
*Cross-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 1342—**Robert W. Gettleman**, *Judge*.

ARGUED NOVEMBER 4, 2009—DECIDED JULY 1, 2010

Before CUDAHY, FLAUM, and EVANS, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This is an insurance case about
twinkling Christmas lights. JLJ, Inc. and its licensee

Inliten, LLC (collectively JLJ) sued Santa's Best Craft, LLC
(SBC) over its marketing of "Stay-On" lights. The present
case is about an insurer's duties to SBC and others in
that underlying action.

JLJ alleged that SBC copied JLJ's "Stay Lit" lights pack-
aging design and that SBC sold Stay-On lights using
false and deceptive language. SBC asked its insurer,
St. Paul Fire and Marine Insurance Company (St. Paul),
for a defense and then sued St. Paul when none was
forthcoming. St. Paul counterclaimed with a declaratory
action about its duty to defend and then tendered hun-
dreds of thousands of dollars to SBC for its litigation
expenses after the district court held that St. Paul had
a duty to defend. The district court, however, agreed
with St. Paul that it was not obliged to cover defense
expenditures for SBC's contract indemnitee Monogram
Licensing (Monogram) or to reimburse the settlement
payment that resolved the underlying action. Each party
appealed. We agree with the district court that St. Paul
had, but did not breach, a duty to defend. We also
agree that the district court properly declined to require
St. Paul to reimburse SBC for Monogram's expenses, but
we remand for further proceedings to resolve whether
St. Paul owes prejudgment interest on litigation expenses
and reimbursement for the settlement expenses.

## I. Background

### A. The relevant parties.

The present litigation has its roots in August 2002, when
JLJ sent SBC a cease-and-desist letter, demanding that

SBC change the packaging of its Stay-On lights. JLJ claimed that the Stay-On lights boxes aped the look and slogans of JLJ's Stay Lit lights. SBC forwarded the letter to St. Paul, which responded that the commercial general liability (CGL) coverage policy SBC purchased did not cover the claims in the demand letter. Specifically, St. Paul claimed that false representation claims were not covered by the policy in the first instance and that two policy exclusions, relating to intellectual property and material previously made known or used, meant that it owed no defense for the remaining claims.

In November 2002, JLJ sued SBC in federal court in the southern district of Ohio for Lanham Act trademark infringement, false designation of origin, false advertising, trademark dilution and deceptive trade practices. See *JLJ, Inc. v. Santa's Best Craft, LLC*, No. C-3-02-00513 (S. D. Ohio). St. Paul again denied coverage. In 2004, after JLJ joined as defendants Santa's Best and H.S. Craft Manufacturing Co., two principal members of SBC, as well as Monogram, St. Paul continued an investigation of its duties, but reserved the right to determine that the policy provided no coverage.

SBC did not wait for St. Paul to finish its investigation. In February, SBC and the other plaintiffs filed this declaratory action to compel St. Paul to defend them and, in June, St. Paul counterclaimed for a declaratory judgment that it had no such duty. In December 2004, the underlying action settled after SBC and its members agreed to pay JLJ $3.5 million and to refrain from using the mark Stay-On or any colorable imitation of the Stay Lit mark.

As noted above, Monogram was added as a defendant in the underlying action based on claims of unjust enrichment and conspiracy for approving SBC's use of the allegedly offending marks and slogans. Monogram, a General Electric (GE) Company subsidiary, and SBC had entered into a trademark licensing agreement (Licensing Agreement) in which SBC promised to "defend, indemnify and hold harmless [Monogram] and GE . . . from and against any and all claims . . . arising out of or in connection with . . . the Licensed Products including . . . any infringement of any rights . . . in connection with the manufacture, advertising, promotion, sale, possession or use of [the] Licensed Products." Santa's Best (recall, one of the members of SBC, which is a limited liability company) reimbursed Monogram's defense expenses of approximately $1.3 million. St. Paul's CGL policy requires it to defend its insured's contract indemnitees, assuming certain control and cooperation requirements are satisfied. These requirements include the indemnitee's obligation to provide St. Paul notice of each legal paper "as soon as possible after it is received"; St. Paul's obligation to first determine that there is no conflict between the insured's interests and those of the indemnitee; and the indemnitee and insured's agreement in writing that they can share the same counsel. Monogram never tendered a defense to St. Paul. Instead, in August 2004, the plaintiffs advised St. Paul that, under the Licensing Agreement, they believed that Monogram was a contract indemnitee and that St. Paul owed coverage. Monogram, in the underlying action, was represented by counsel separate from plaintiffs', although the two legal teams coordinated a defense.

**B. The district court's orders.**

The district court held that St. Paul had, but did not breach, a duty to defend because the complaints in the underlying action potentially sketched a claim for infringement of slogan, which was covered as an "advertising injury offense." See *Santa's Best Craft v. St. Paul Fire & Marine Ins. Co. (Santa's Best I)*, 1:04-cv-01342, 2004 WL 1730332, at *10 (N.D. Ill. July 30, 2004). It also held that the intellectual property exclusion did not apply or that, even if it did, the allegations could be construed as a infringement of a trademarked slogan, which was an exception to the exclusion. See *id*. at **7-8. In addition, the court held that the "material previously made known or used" exclusion did not apply because not all of the slogans were finalized until 2002, after St. Paul's policy became effective. See *id*. at **8-10. In a subsequent order, the district court stayed the action pending the outcome of state-court litigation involving St. Paul. See *Santa's Best Craft v. St. Paul Fire & Marine Ins. Co. (Santa's Best II)*, 353 F. Supp. 2d 966 (N.D. Ill. 2005).

This state-court litigation primarily involved a coverage action instituted by SBC against the last significant party in this case—Zurich American Insurance Company (Zurich), SBC's insurer before St. Paul's policy took effect in January 2002.[1] Before they filed the present lawsuit, the plaintiffs also looked for a defense from Zurich and, even though Zurich provided one, they filed a declaratory action in the Circuit Court of Cook County,

---

[1] Zurich is not a party to the present appeal.

Chancery Division, to address several issues about Zurich's reimbursement of the defense expenses. See *Santa's Best Craft, LLC v. Zurich Am. Ins. Co.*, Case No. 04 CH 01885 (Cook County Ct., Ch. Div.) (*Zurich* action). Zurich drew St. Paul into the action via a third-party complaint for contribution. In a December 2005 order, the *Zurich* court indicated that St. Paul "agree[d] that it is bound by this Court's determination as to the reasonableness of fees at issue both in this proceeding and also in [our present case on appeal]." *Santa's Best Craft, LLC v. Zurich Am. Ins. Co.*, Case No. 04 CH 01885 (Cook County Ct., Ch. Div. Dec. 14, 2005). It entered a judgment of $1.54 million in defense costs for the plaintiffs, of which approximately $1.27 million were Monogram's defense costs.[2] The *Zurich* court then denied the plaintiffs' motion for prejudgment interest for reasons stated on the record. See *id*. To date, according to the parties' briefing, all of the costs the plaintiffs incurred in the underlying action have been reimbursed except the Monogram defense costs and the settlement payments (and possible interest payments).

After the *Zurich* action was terminated, the district court held that St. Paul did not owe the plaintiffs a duty to indemnify them for settlement costs in the

---

[2] For reasons neither party explained to the district court, Zurich was "not currently responsible" for reimbursing plaintiffs for the Monogram costs. *Santa's Best Craft v. St. Paul Fire & Marine Ins. Co.* (*Santa's Best III*), 1:04-cv-01342, 2008 WL 4328192, at *6 (N.D. Ill. Sept. 16, 2008).

underlying action because some of the claims were not covered under the CGL policy exclusions and because the plaintiffs failed to allocate the settlement between covered and non-covered claims. See *Santa's Best III*, 1:04-cv-01342, 2008 WL 4328192, at *9 (N.D. Ill. Sept. 16, 2008). It also held that St. Paul did not owe prejudgment interest or reimbursement for Monogram's defense costs because of other CGL policy exclusions and the *Zurich* court's findings. See *id*. at **6-7, 9.

## II.  Standard of Review

Since this is a diversity case, we apply state substantive law and federal procedural law. See *Hanna v. Plumer*, 380 U.S. 460 (1965); *Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir. 2006). No party raises a choice of law issue and therefore, as did the district court, we apply the law of the forum state, Illinois. See *Casio, Inc. v. S.M.& R. Co.*, 755 F.2d 528, 531 (7th Cir. 1985). A district court's grant of summary judgment is reviewed de novo, *Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009), examining the record in the light most favorable to the non-moving party. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009). Insurance contracts are interpreted to effectuate the intent of the parties as expressed through the contract language. See *Nicor, Inc. v. Assoc. Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 285-86 (Ill. 2006). Ambiguities are construed against the insurer, as drafter. See, e.g., *McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125, 1127 (Ill. 1999). The construction of an insurance contract is a question of law, reviewed de novo. See *Nicor, Inc.*, 860 N.E.2d at 285.

## III. Discussion

### A. Duty to defend.

The plaintiffs argue in support of the district court's decision that St. Paul owed them a defense because the complaint in the underlying action included allegations that made out a claim for "[u]nauthorized use of . . . any slogan . . . of others in your advertising," where a slogan is defined as "a phrase that others use and intend to attract attention in their advertising." The term slogan excludes a phrase "used as, or in, the name of" organizations or businesses other than the insured or "any of the . . . products . . . of any person or organization, other than [the insured]." St. Paul responds that these allegations serve as background for JLJ's trade dress infringement claim, a claim that St. Paul is not required to defend because the CGL policy has an exclusion for certain intellectual property claims.

"To determine whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy. . . . If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992) (internal citations omitted). St. Paul's policy provided that "[w]e'll have [the right and duty to defend] . . . even if all of the allegations of the claim or suit are groundless, false, or fraudulent." And, Illinois law specifies that "[w]e give little weight to the legal label that characterizes the under-

lying allegations. Instead, we determine whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001). "[I]f the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy." See *id.* (quoting with internal citations omitted, *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926 (Ill. 1991)); see also *Outboard Marine Corp.*, 607 N.E.2d at 1220.

The district court properly found that the CGL policy requires St. Paul to defend the plaintiffs. It held that the insurer owed a duty to defend because the allegations may potentially give rise to a claim for unauthorized use of slogan. See *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 553-57 (6th Cir. 2003) (Michigan law) (insurer owed duty to defend an action with trademark and trade dress claims partially based on the fact that the competitor's trademarked phrase "The Wearable Light" was potentially an infringement of slogan).

St. Paul's CGL policy covers "unauthorized use" of a "slogan," which suggests that the claims underlying this conduct include as an element the defendant's ownership or, at least, control, over the slogan. See, e.g., *Applied Bolting Tech. Prods., Inc. v. U.S. Fidelity & Guar. Co.*, 942 F. Supp. 1029, 1034-35 (E.D. Pa. 1996) (Vermont law) (holding that allegations that a company falsely advertised that it complied with an industry standard did not fall within insurance coverage for lawsuits about infringe-

ment of slogan); see also BLACK'S LAW DICTIONARY (7TH
ED. 1999) (defining authorize as "1. To give legal authority;
to empower 2. To formally approve; to sanction." and
unauthorized as "Done without authority; specif., made
without actual, implied or apparent authority.")[3] St. Paul
contends that JLJ has no ownership or exclusive right to
the slogans on the packages and, therefore, cannot
have asserted an unauthorized use/infringement of
slogan claim. See *Lexmark Int'l*, 761 N.E.2d at 1226 (de-
clining to find a duty to defend based on infringe-
ment of slogan when the insured was accused of breach
of contract and unfair business practices but not accused
of lifting any of the plaintiff's slogans). The present case
is distinguishable because *Lexmark*'s underlying suit did
not contain claims for relief based on the plaintiff's own
advertising ideas or slogans, or claim ownership or the
exclusive right to the language it used. *Id*. In contrast,
the JLJ complaints contain allegations that SBC copied

---

[3] Beyond the use of the words "authorize" or "unauthorized"
in the sections about infringement of slogan, the CGL policy
also used "authorize" as a verb in conjunction with the
indemnitee defense control and authority requirements, to
wit: "The indemnitee must give us authority in writing to
conduct its defense against the claim or suit," suggesting
that the term "authority" may be either the first or second
Black's Law Dictionary definition above. The policy's indeter-
minate use of the word suggests that "unauthorized" might
encompass the informal second Black's Law Dictionary defini-
tion of "authority" and therefore conduct that triggers
coverage under infringement of slogan need not consist of
formal claims of ownership.

certain JLJ slogans, suggesting that JLJ had some claim of ownership over them. Cf. *Zen Design Group*, 329 F.3d at 555 n.9, 556-57 (discussing "assertions of ownership" over the contested phrase such as the advertiser's trademarking of the slogan, its widespread use of the slogan and the good will it developed that is associated with the phrase).[4] In addition, although many of these allegations about slogans support JLJ's trade dress claim, as noted above, our inquiry is based on the allegations in the complaint, not the legal labels attached to them. See, e.g., *id*. at 554 n.4, 555-56 (noting that the complaint's failure to refer to the offending phrase as a "slogan" and failure to include a specific claim labeled "infringement of slogan" did not preclude the finding that the insurer had a duty to defend based on allegations of infringement of slogan). Given the presumptions at play, the complaint triggered St. Paul's duty to defend. We now address whether any exclusions in St. Paul's policy apply so that St. Paul has no duty to defend.

---

[4] We note that, under the language of the contract, this idea of indicia of ownership or control does not mean that the underlying complaint must include allegations that the slogans were trademarked or copyrighted. In other parts of the CGL policy, St. Paul specifically refers to slogans or advertising material as copyrighted or trademarked instead of using the word "slogan" without modifier as St. Paul does in the section about infringement of slogan.

### 1. IP exclusion.

St. Paul contends that JLJ's slogans are not trademarked and therefore the claims are not covered because of the intellectual property (IP) exclusion. Insurers have the burden of proving that an exclusion applies. See, e.g. *Ins. Corp. of Hanover v. Shelborne Assocs.*, 905 N.E.2d 976, 982 (Ill. App. Ct. 2009). Insureds, in turn, have the burden to prove that an exception to an exclusion restores coverage. See, e.g., 17A G. COUCH, COUCH ON INSURANCE § 254:13 (2009). St. Paul's IP exclusion disallows coverage for "injury or damage . . . that results from any actual or alleged infringement or violation of any of the following rights or laws: . . . trade dress, . . . trademark, other intellectual property rights or laws."An exception to the IP exclusion is "unauthorized use of … trademarked slogan … of others in your advertising."

St. Paul argues that, because the conduct the plaintiffs identify as making out a claim for infringement of slogan is all conduct that, in the language of St. Paul's policy, "results from" a trade dress claim, the IP exclusion precludes coverage. Under any authority we could find indicating when a non-covered claim may affect coverage for a covered claim based on the similarity of allegations, the fact that the trade dress allegations are a subset of those alleging infringement of slogan does not eliminate coverage under the policy. That is, unless a slogan infringement claim would not have arisen but for the trade dress violation claim (or necessarily arises out of the trade dress violation claim)—clearly not the case here—we cannot find that the exclusion for trade

dress claims excuses St. Paul from a duty to defend the underlying action. See, e.g., *St. Paul Fire & Marine Ins. Co. v. Antel Corp.*, 899 N.E.2d 1167, 1176 (Ill. App. Ct. 2008) (if an insurer relies on an exclusion, it must be "clear and free from doubt" that the exclusion applies); cf. *Hugo Boss Fashions, Inc. v. Fed. Ins.* Co., 252 F.3d 608, 623 n.15 (2d Cir. 2001) (New York law) (suggesting that the breach of contract exclusion might apply if, "but for" a breach of contract, there would be no advertising injury or other covered injury, but noting also that it was uncertain what was meant by the "arising out of" language of the exclusion); *Cent. Mut. Ins. Co. v. StunFence, Inc.*, 292 F. Supp. 2d 1072, 1081-82 (N.D. Ill. 2003) (holding that knowledge of falsity exception did not preclude coverage because some of the claims were based on unintentional, rather than knowing, conduct). The district court properly found a duty to defend that was not affected by the IP exclusion.

Additionally, the district court found, however, that even if the IP exclusion applies, the differences between trade dress and trademark have so narrowed that, if the IP exclusion applied, the exception for trademarked slogans likely did as well. It noted that what is or is not trademarked is a decision for the court in the underlying action. We agree with the district court that, even if the IP exclusion applied, the trademark exception would require St. Paul to defend the action given the uncertainty whether the court in the underlying action would have decided the slogan qualified as trademarkable. But, because St. Paul has not met its burden to prove that the IP exclusion applies in the first instance, we need not reach this alternative holding.

## 2. Material previously made known or used exclusion.

St. Paul claims that its "material previously made known or used" (MPMK) exclusion applies to defeat a duty to defend with respect to the 2003-04 policy period, but acknowledges that it did not make this argument with respect to the 2002-03 policy period (although it argues that the exclusion defeats any duty to indemnify under either policy because facts revealed in the course of litigation demonstrated that much of the offending behavior predated 2002). The district court held that St. Paul was obligated by the 2002-03 policy to defend the plaintiffs because the insurer must defend if even one allegation of liability falls within the policy's coverage.

The MPMK exclusion bars coverage for personal or advertising injury that results from "any material that was first made known before this agreement begins" and "any advertising idea or advertising material, or any slogan or title, of others, whose unauthorized use in your advertising was first committed before this agreement begins." Given that the parties agree that the allegations in the relevant complaints describe some language first used by the plaintiffs in 2002, this exclusion bars coverage under the 2003-04 policy but not under the 2002-03 policy.[5] Cf. *Taco Bell Corp. v. Continental Cas. Corp.*, 388 F.3d 1069, 1073 (7th Cir. 2004) (Illinois law) (unless the differ-

---

[5] In a deposition taken for the *Zurich* action, SBC's lawyer testified that the settlement talks did not address allocating settlement amounts based on the policy in effect at the time of settlement.

ences in the subsequent advertising are immaterial, modified advertising can serve as "fresh wrongs" that are not excluded from insurance coverage by a "prior publication" exclusion).

### B. Complying with the duty to defend.

The district court found no breach of the duty to defend because St. Paul timely filed a cross-motion and a counter-claim seeking a declaration that it did not have a duty to defend. Under Illinois law, an insurer has three options if it contests its duty to defend: (1) seek a declaratory judgment regarding its obligations before trial of the underlying action; (2) defend the insured under a reservation of rights; or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend and estopped from asserting defenses as to payment based on non-coverage. See, e.g., *County Mut. Ins. Co. v. Olsak*, 908 N.E.2d 1091, 1098 (Ill. App. Ct. 2009). That is, if it declines to defend under a reservation of rights, to avoid estoppel, the insurer must file a declaratory action or answer and cross claim in an action against an insured. See, e.g., *L.A. Connection v. Penn-America Ins. Co.*, 843 N.E.2d 427, 431 (Ill. App. Ct. 2006) (collecting cases and deciding that the weight of Illinois authority holds that the insured may file the declaratory judgment action, even though contrary authority exists); *Roman Catholic Diocese of Springfield in Ill. v. Md. Cas. Co.*, 139 F.3d 561, 565-66 (7th Cir. 1998) (Illinois law). But see *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 749 (7th

Cir. 2008) (Illinois law) (explaining, without citation, that because the insured instituted the declaratory action regarding coverage, the insurer was estopped from raising a policy defense).[6]

St. Paul claims that it did not breach its duty to defend because the plaintiffs initiated a declaratory judgment action in February 2004, before St. Paul had time to finish its investigation of coverage of the amended complaint, tendered in January 2004. Moreover, St Paul counterclaimed in June 2004, seeking a declaration that it owed no duty to defend before the case reached settlement, talks for which began in late 2004. Illinois courts have three tests to measure the timeliness of the declaratory action. It must be filed: (1) before the underlying

---

[6] We are not bound by our prior decisions regarding our predictions of state law, especially if state law has evolved. See, e.g., *Taco Bell Corp.*, 388 F.3d at 1077. In *Supreme Laundry*, however, the insurer's policy defense was one not raised until very late in the game, after the underlying action was settled (the coverage action was also not filed until after the underlying action was resolved in late 2005). See 521 F.3d at 745-46. *Supreme Laundry* also did not involve a duty to indemnify. See Mot. Judgment on the Pleadings, C.A. 1:06-cv-4476, Doc. 17, at 3 n.1 (Nov. 7, 2006). The issues in the present case were, in contrast, squarely addressed in *Roman Catholic Diocese*. More importantly, our prediction of the Illinois Supreme Court's opinion on the matter, based on the trend in Illinois appellate decisions, is that a declaratory judgment action initially filed by the insured may satisfy an insurer's duty to defend as described in the main body of our opinion.

action is resolved, see *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1138 (Ill. 1999); (2) before settlement or trial is imminent, *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 965 (Ill. App. Ct. 2001) (finding no breach when declaratory judgment was filed 15 months before settlement); or (3) within a reasonable time of being notified of the underlying suit. *L.A. Connection*, 843 N.E.2d at 432-33 (timely when insurer cross-claimed 4 months after it denied insurance coverage); *Sears, Roebuck & Co. v. Seneca Ins. Co.*, 627 N.E.2d 173, 178 (Ill. App. Ct. 1993) (seven months not untimely). St. Paul satisfies all of these timeliness tests. Because St. Paul did not breach its duty to defend, we do not address the plaintiffs' arguments based on a breach.

## C.  Reimbursement of defense costs already advanced to the plaintiffs.

In its cross-appeal, St. Paul asks us to reverse the district court's decision to deny St. Paul's request for reimbursement of costs it already submitted to the plaintiffs because of the district court's finding that St. Paul had a duty to defend. Because the district court did not err, St. Paul's request for leave to amend its counterclaim to seek reimbursement was properly denied.

## D.  St. Paul may need to reimburse the JLJ settlement payment.

St. Paul argues, as held the district court, that the plaintiffs failed to designate which of the claims addressed

by the settlement were covered by the St. Paul CGL policy and, therefore, St. Paul properly declined to reimburse the settlement. The plaintiffs argue that they have no burden to allocate, citing *Federal Ins. Co. v. Binney & Smith, Inc.*, 913 N.E.2d 43, 53-54 (Ill. App. Ct. 2009). They acknowledge that JLJ's threatened damages in the underlying action were undifferentiated as to the various claims, and they argue that there is no practical way of allocating the settlement.

In *Binney*, an Illinois appellate court confirmed that an insurer must reimburse an insured for its settlement expenses when the settlement was made in "reasonable anticipation of liability"[7] for damage covered by the insurer's policies, *U.S. Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1244 (Ill. App. Ct. 1994), and the settlement's primary focus was a claim covered under the insurer's policy, see *Commonwealth Edison v. Nat'l Union Fire of Pittsburg, Pa.*, 752 N.E.2d 555, 565 (Ill. App. Ct. 2001). See *Binney*, 913 N.E.2d at 48-49, 53-54. Both *Gypsum* and *Edison* relied on the record developed in the underlying action, including allegations in the complaint and evidence presented in the coverage action (*Edison*) or the evidence presented in underlying companion cases that went to trial before settling (*Gypsum*) to conclude that the settlement resolved litigation primarily focused on covered damage. See, e.g., *Gypsum*, 643 N.E.2d at 1244-47; *Edison*,

---

[7] The district court held that the settlement was reasonable. See *Santa's Best III*, 2008 WL 4328192, at *8. St. Paul does not challenge the reasonableness of the settlement on appeal.

752 N.E.2d at 565. *Edison* explains that an insured is not required to apportion its *liability* for different claims because that would either require the coverage litigation to be a retrial of the merits of the insured's underlying lawsuit and/or would discourage settlement because the insured would essentially have to prove its own liability for the underlying conduct even if it had not made that concession in arriving at a settlement. See *Edison*, 752 N.E.2d at 565-66 (discussing *Gypsum*). Illinois courts do require the insured to establish *when* the covered claims arose to allocate responsibility for paying the settlement based on which insurer's policy was in effect at the time. See *Binney*, 913 N.E.2d at 54, 56-57; see also *St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 496 N.E.2d 1176, 1179 (Ill. App. Ct. 1986) (because the insured failed to meet its burden to prove that some of the roof damage occurred during the effective dates of the insurer's policy, judgment was wrongly rendered for insured); *Fidelity & Cas. v. Mobay Chem. Corp.,* 625 N.E.2d 151, 159 (Ill. App. Ct. 1992) (placing burden on insureds to allocate settlements for periods of policy coverage and non-coverage).

The district court, relying on *Illinois School District Agency v. Pacific Insurance Company*, held that the plaintiffs had to allocate the settlement into covered and uncovered claims. See 471 F.3d 714, 723 (7th Cir. 2006) (holding that the policy at issue included no duty to allocate defense costs but that if, on remand, the insurer owed the insured a duty to defend a contested claim, the insured might have to prove how much it spent defending that contested claim). This case relied on the specific contract

at issue and cited *St. Michael's*, which addresses alloca-
tion based on when claims arose rather than based
on liability.

Legal commentators have noted the lacuna in the
caselaw regarding apportionment of settlements in lieu
of litigation that would likely have involved both
covered and uncovered claims. See, e.g., ALLAN D. WINDT,
2 INSURANCE CLAIMS AND DISPUTES § 6:31 (Supp.
Mar. 2010). Some states place on the insurer the burden
of proving (by a preponderance of the evidence) that
specific settlement costs could be allocated solely to
claims for relief that are not even potentially covered by
the insurance policy. See, e.g., *Buss v. Superior Ct.*, 939 P.2d
766, 778 (Cal. 1997) (holding that an insurer may seek
reimbursement of *defense* costs that may be allocated to
claims that are not even potentially covered because a
party desiring relief carries the burden of proof); COUCH
ON INSURANCE 3D § 226:129, at 226-127-128 (2005). Other
courts place the burden to segregate claims on the in-
sured. See, e.g., *Comsys Info. Tech. Servs., Inc. v Twin City
Fire Inst. Co.*, 130 S.W.3d 181, 198-200 (Tex. Ct. App.
[Houston-14th Dist.] 2003), pet. denied. Still others vary
the burden: initially on the insured to prove coverage,
on the insurer to prove the existence of an exclusion,
and back to the insured to prove an exception to an
exclusion. Lastly, courts generally addressing corporate
directors and officers liability insurance policies (D&O
policies) sometimes use the larger-settlement rule, where
an insurer is responsible for the settlement except to the
extent it is larger because of uncovered claims. See, e.g.,

*Caterpillar, Inc. v. Great Am. Ins. Co.*, 62 F.3d 955, 961-62 (7th Cir. 1995) (Illinois law).[8]

Consistent with the Illinois policy that a coverage action should not require the insureds to conclusively establish their own liability in the interest of promoting settlement, we think the proper inquiry is whether the claims were *not even potentially covered* by the insurance policy. See, e.g., *Gypsum*, 643 N.E.2d at 1244 (noting the benefits of settlement). A competing policy interest is equity—it is inequitable to require an insurer to pay for a settlement that is clearly not within the terms of its policy. Consequently, our prediction is that Illinois courts, in cases in which it is possible that none of the settlement was attributable to the dismissal of claims for damage covered by the insurer's policy, would evaluate whether a "primary focus" of the claims that were settled was a potentially covered loss (burden on the insured). Conversely, if it can be established that the claims were not even potentially covered (burden on the insurer), then the insurer is not required to reimburse the settlement. This "primary focus" language is derived from the *Commonwealth Edison* case. See *Edison*, 752 N.E.2d at 565; see also *Binney*, 913 N.E.2d at 54 (citing *Edison*). Because, in this case, the parties contest whether the settlement was made in anticipation of covered claims, the burden should be on the insured to prove coverage of the settlement in the first place and then on the insurer

---

[8] In that case, we declined to allocate the burden of proof. See *id*. at 964 n.11.

to prove the existence of exclusions barring coverage. As the district court held, several of the allegations in the underlying action's complaint deal with claims and conduct outside of the policy coverage, including the trademark claims based on the product names and JLJ's false advertising claim. See *Santa's Best III*, WL 4328192, at **8-9. We agree with these holdings based on the plain language of St. Paul's policy.

The only remaining coverage dispute, therefore, is whether the allegations and record evidence supporting the trade dress claim suggest that the primary focus of settlement was damages payments for a covered infringement of slogan claim. The district court concluded that plaintiffs had not made an allocation of the settlement and therefore denied any reimbursement for the settlement. Although the district court's inquiry is close to the one we predict Illinois courts would require, we will remand to allow the district court to consider the record evidence (and supplemental briefing or an evidentiary hearing if it so chooses, although it may choose not to do so) of whether a primary focus of the underlying action was a covered loss. In addition, St. Paul may attempt to prove that the MPMK exclusion applies to defeat recovery under the policy.

### E.   St. Paul does not have to reimburse SBC for Monogram's defense expenditures.

Under the License Agreement, Monogram gave SBC permission to market its Christmas lights under the GE brand. The plaintiffs contend that this Agreement required them to defend and indemnify Monogram for any litiga-

tion arising out of products marketed with the GE label and that St. Paul was required to reimburse expenditures for this purpose because Monogram was their contract indemnitee.

St. Paul's CGL policy covers the advertising injury of insureds' indemnitees if several conditions are met. The plaintiffs argue that they complied with all preconditions to reimbursement that were feasible in view of St. Paul's failure to timely defend, and (or, alternatively) the defense of Monogram was "reasonably related" to their own defense, requiring St. Paul to reimburse them for Monogram's costs.

In December 2005, the plaintiffs amended their complaint in the present case to seek reimbursement for Monogram's expenses, which were paid by Santa's Best. The district court determined that St. Paul owed Monogram nothing because Santa's Best was under no obligation to pay Monogram's expenses and, therefore, even if SBC were a contract indemnitee under the St. Paul policy, SBC is responsible for its own liabilities, not those of Santa's Best. See *Santa's Best III*, 2008 WL 4328192, at **6-7. Alternatively, the district court noted that the plaintiffs failed to tender the complaint for many months and a conflict of interest existed between Monogram and the plaintiffs. See *id*.

St. Paul is not required under its policy to reimburse the Monogram expenses. The CGL policy required St. Paul to determine that there was no conflict between

the insured's interests and those of the indemnitee[9] and required the indemnitee to provide St. Paul with a copy of any demand and give notice of the claim or suit.[10] In support of the plaintiffs' motions for partial summary judgment quantifying defense expenses, counsel for the plaintiffs and Santa's Best as well as SBC's CFO testified via declaration that a separate firm represented Monogram in the underlying action because of a "potential conflict of interest" between the plaintiffs and Monogram that precludes Monogram's representation by counsel for the plaintiffs. The plaintiffs now argue that they never conceded there was a conflict of interest. They cite a later declaration in support of a separate summary judgment motion, in which the CFO testified that the claims against Monogram and against the plaintiffs "are

---

[9] "We must determine there's no conflict between your interests and those of the indemnitee, based on the allegations in the claim or suit and on what we know about the factual and legal basis for the damages being sought."In its Defendant's Response to Plaintiffs' Motion for Summary Judgment on the Monogram defense issue, St. Paul explained that the plaintiffs claimed, in a sworn affidavit filed with the district court, that a conflict of interest prevented Monogram and the plaintiffs from having common counsel in the underlying action.

[10] St. Paul's policy provides: "You and the indemnitee must ask us to conduct and control the defense of that indemnitee against the claim or suit under this agreement." This require-ment does not limit when the indemnitee and the insured can "ask"—it is arguable that this condition was met by August 2004.

essentially the same" and that "[t]he work of all defense counsel . . . benefitted Santa's defense." Regardless whether the earlier declarations constituted a concession, the CFO's declaration does not call into doubt the district court's determination that a conflict existed between Monogram and the plaintiffs such that they did not comply with all preconditions to St. Paul's providing Monogram's defense. We acknowledge that certain of St. Paul's requirements were impossible for the plaintiffs to satisfy because St. Paul did not immediately defend it in the underlying action. That said, the plaintiffs could have complied with other requirements but chose not to.

Assuming, arguendo, that they did not waive the argument, the plaintiffs also argue that, because defense of Monogram was "reasonably related" to their defense, St. Paul should cover Monogram's expenses. The plaintiffs note that Monogram's liability is largely derivative of their own. See *Ryland Mortgage Co., Inc. v. Travelers Indem. Co.*, 177 F. Supp. 2d 435, 439-40 (D. Md. 2001) (stating in dicta: if defense expenses are "reasonably related" to a covered claim, the expenses may be wholly apportioned to this covered claim so that an insurer must reimburse some defense costs that aid in the defense of an uncovered claim; same goes for coverage of defense expenses for an uninsured party), *vacated on other grounds*, 70 Fed. App'x. 673 (4th Cir. July 18, 2003); *Fed. Realty Inv. Trust v. Pac. Ins. Co.*, 760 F. Supp. 533, 537 (D. Md. 1991) (requiring insurer to cover all uncovered claims, including against uncovered parties, if the insured proves, by a preponderance of the evidence, that the defense of these uncovered

claims is reasonably related to covered claims/parties).[11] Separately, in the particular case of directors and officers insurance (D&O policies), several courts use a "reasonably related" rule to require the insurer issuing the D&O policy to cover some defense expenditures also used to defend the directors and officers' uninsured corporation. See, e.g., *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1282, 1289 (9th Cir. 1995) (noting that the insurer conceded that the defense costs were covered under the D&O policy).

While insurance contracts should be construed against the drafter, nothing in the St. Paul's policy supports the plaintiffs' argument here that the Illinois Supreme Court would apply a "reasonably related" test to hold that Monograms' costs are covered. In Illinois, as the plaintiffs acknowledge, a duty to defend encompasses "defensive" *claims* that serve to reduce liability—but its courts are mum on coverage for uninsured parties. See *Great West Cas. Co. v. Marathon Oil Co.*, 315 F. Supp. 2d 879, 882-83 (N.D. Ill. 2003). Cf. *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.*, 728 N.E.2d 680, 684-85 (Ill. App. Ct. 2000) (holding that the insurer did not have to reimburse defense expenses related to an offensive counterclaim). The plaintiffs therefore ask us to extend our limited acceptance of the "larger settlement rule" for certain D&O policies to require reimbursement for *defense* ex-

---

[11] The Fourth Circuit has noted that the "reasonably related" rule is generally confined to D&O polices, not at issue here. See *Perdue Farms, Inc. v. Travelers Cas. & Surety Co. of Am.*, 448 F.3d 252, 260 (4th Cir. 2006).

penses of related parties unless total defense costs are higher because of the uninsured party's defense. Cf. *Caterpillar, Inc.*, 62 F.3d at 962 (emphasizing that the proper allocation method is primarily an issue of contract).

None of these cases allows us to predict that the Illinois Supreme Court would require an insurer to reimburse the defense costs of all parties whose defense may have benefitted an insured, given the contract provisions at issue here. The plaintiffs' "reasonably related" rule would swallow the contract provisions limiting St. Paul's liability to its insureds' contract indemnitees. St. Paul also argues that Monogram's defense expenditures were not in fact reasonably related to the plaintiffs' and questions whether defense costs would have been the same whether or not Monogram was a party to the underlying action—it notes, for example, that Monogram had separate counsel. We need not address this argument, although Monogram's separate counsel, which incurred a known amount of expenses, militates against such a finding were we able to make one. We conclude that St. Paul does not owe reimbursement for Monogram's defense costs, and we therefore need not address St. Paul's further arguments on this issue.

### F.   St. Paul may owe prejudgment interest on the defense costs.

In its briefing, St. Paul appears to acknowledge that the plaintiffs would like us to determine whether St. Paul owes prejudgment interest for the plaintiffs' general defense costs, in addition to those costs incurred by Monogram and the settlement payment. St. Paul contends

that an order in the *Zurich* action works to collaterally estop an award of interest and, moreover, the sums are unliquidated. The district court denied the plaintiffs' motion for prejudgment interest because it held that St. Paul was not responsible for the settlement payment or Monogram's expenses—it did not address pre-judgment interest as to plaintiffs' defense costs apart from those sums. See *Santa's Best III*, 2008 WL 4328192, at *9.

An Illinois statute allows prejudgment interest for written sums. 815 ILCS 205/2 provides:

> § 2. Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment. In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of a creditor.

Prejudgment interest is available for sums due on insurance policies. See, e.g., *Couch v. State Farm Ins. Co.*, 666 N.E.2d 24, 27 (Ill. App. Ct. 1996). The decision to award prejudgment interest is within the trial court's sound discretion and will not be reversed absent an abuse of

that discretion. See *Statewide Ins. Co. v. Houston Gen. Ins. Co.*, 920 N.E.2d 611, 624 (Ill App. Ct. 2009).

Interest begins to accrue when the underlying attorneys' fees become liquidated, i.e. "due and capable of exact computation." See *Conway v. Country Cas. Ins. Co.*, 442 N.E.2d 245, 250 (Ill. 1982) (finding that insurer breached its duty to defend). A sum is liquidated if calculation does not require "judgment, discretion, or opinion." See *Dallis v. Don Cunningham & Assocs.*, 11 F.3d 713, 719 (7th Cir. 1993) (quoting *First Nat'l Bank Co. of Clinton, Ill. v. Ins. Co. of N. Am.*, 606 F.2d 760, 770 (7th Cir. 1979)). But, a good-faith defense to liability does not bar prejudgment interest if the amount is ascertainable. See, e.g., *Couch*, 666 N.E.2d at 27.

The court should examine the relevant insurance policy and the circumstances of the case. See *Cent. Nat. Chi. Corp. v. Lumbermens Mut. Cas. Co.*, 359 N.E.2d 797, 802-03 (Ill. App. Ct. 1977); *DiLeo v. U.S. Fid. & Guar. Co.*, 248 N.E.2d 669, 676-77 (Ill. App. Ct. 1969) (holding that interest began to accrue as specified by the terms of the policy—60 days after the defendants were furnished the proof of loss). St. Paul's policy provides that it will:

> pay the interest that accumulates before a judgment and is awarded against the protected person on that part of a judgment we pay. But if we make a settlement offer to pay the available limit of coverage, we won't pay the prejudgment interest that accumulates after the date of our offer.

Because the district court never explicitly considered the issue of prejudgment interest as to St. Paul's defense

expenditures, it is instructed to make such a holding on remand.

As for St. Paul's arguments about collateral estoppel: the *Zurich* court's December 2005 order denied the plaintiffs' motion for prejudgment interest on Zurich's payments. St. Paul agreed to be bound by certain rulings in the *Zurich* action, and the December 2005 holding suggests that the plaintiffs "may" be bound by the *Zurich* court's order's language about prejudgment interest. See *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, No. 04 C 1342 (N.D. Ill. Mar. 21, 2006). Collateral estoppel bars a party from asserting a claim that has been resolved in another lawsuit between the same parties (or those in privity with them). See *Aaron v. Mahl*, 550 F.3d 659, 665 n.5 (7th Cir. 2008). It applies if: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White*, 833 N.E.2d 834, 843 (Ill. 2005); see also *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (applying state laws of preclusion to determine the effect of a prior state court action on a federal diversity case). The plaintiffs argue that, in the *Zurich* action, they never litigated the issue of St. Paul's duty to pay prejudgment interest on the defense costs. It seems doubtful that St. Paul is correct that the *Zurich* court's order affects prejudgment interest as to St. Paul's defense expenses generally but, on remand, the district court should evaluate whether any issues decided in the

*Zurich* action act as collateral estoppel for a determination about prejudgment interest on St. Paul's defense cost reimbursements. As noted above, on remand, the parties are admonished to restrict their briefing to a succinct statement of the issues and the district court may certainly consider sanctions for any further excessive commitments to briefing and arguing the few remaining issues in this case, consistent with the foregoing.

AFFIRMED in part,
REVERSED and REMANDED in part.